UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                  Case No. 3:23-cr-572

        Plaintiff,

v.                                 MEMORANDUM OPINION
                                     AND ORDER

Rashad Norris,
        Defendant.

## I. INTRODUCTION

Before me are Defendant Rashad Norris's motions to dismiss the indictment. (Doc. Nos. 11 & 16). The government filed briefs in opposition. (Doc. Nos. 12 and 17). Norris filed a brief in reply with respect to his first motion. (Doc. No. 15). After the Sixth Circuit Court of Appeals decided *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), during the pendency of this motion, I offered the parties the opportunity to supplement their briefing in light of that decision. (*See* non-document entry dated September 12, 2024). For the reasons that follow, I deny Norris's motions.

## II. BACKGROUND

According to the indictment, Norris was convicted of possession of a controlled substance with intent to deliver in the Harris County, Texas District Court on April 11, 2017. (Doc. No. 1 at 1). Norris then allegedly possessed a Smith & Wesson .380 caliber semi-automatic pistol on July 28, 2023, knowing he had previously been convicted of the Texas offense. (Doc. No. 1 at 1). The government charged Norris with violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (*See id.*).

After the parties finished their briefing on this motion, the Sixth Circuit decided *Williams*, which is new "binding precedent" that "controls" a Second Amendment challenge to § 922(g)(1). *United States v. Parham*, 119 F.4th 488, 490, 495 n.4 (6th Cir. 2024). Norris filed a supplemental motion to dismiss, (Doc. No. 16), and the government filed a supplemental brief in opposition. (Doc. No. 17).

### III. ANALYSIS

#### A. SECOND AMENDMENT CHALLENGE

Norris brings both facial and as-applied challenges to his prosecution under § 922(g)(1). (*See* Doc. No. 11 at 1; Doc. No. 16 at 7). But as he now acknowledges, (Doc. No. 16 at 7), *Williams* forecloses his facial challenge. *See* 113 F.4th at 657; *Parham*, 119 F.4th at 495 n.4. So, I need only evaluate whether § 922(g)(1) is constitutional as applied to him. *Williams* likewise governs my analysis of Norris's as-applied challenge. *See* 113 F.4th at 662-63; *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024) (applying *Williams* to reject the defendant's as-applied challenge).

#### 1. The *Williams* As-Applied Framework

Because § 922(g)(1) is facially constitutional under the Second Amendment, a "class-wide presumption" of constitutionality applies to those charged under the statute. *Williams*, 113 F.4th at 657. Therefore, a defendant bringing an as-applied challenge bears the burden "to show he's *not* dangerous;" the government need not affirmatively establish a defendant's dangerousness. *Id.* at 662 (emphasis added).[1] Consistent with the case-specific nature of the challenge, this inquiry "focus[es]

---

[1] *Williams* addressed a post-conviction challenge to § 922(g)(1), and Norris brings his challenge pre-trial. But nothing in *Williams* suggests a fundamentally different inquiry should apply to a pre-trial Second Amendment challenge. Just as "a court can accept prior convictions without an evidentiary hearing or jury fact finding" in the sentencing context, *Williams*, 113 F.4th at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)), so must I "view the [i]ndictment's factual allegations as true" in evaluating Norris's motion to dismiss. *Costello v. United States*, 350 U.S. 359, 363 (1956). As I explain below, the nature of the evidence is somewhat different, because, unlike in *Williams*, there is no presentence report on which I can rely. *See Williams*, 113 F.4th at 662. Instead, I take the truth of the indictment's allegations about Norris's prior convictions as a starting point,

2

on each individual's specific characteristics" and takes into consideration "the individual's entire criminal record." *Id.* at 657. This includes "any evidence of past convictions in the record, as well as other judicially noticeable information . . . such as prior convictions." *Id.* at 660.

But this is no "categorical" inquiry. *Williams*, 113 F.4th at 660 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016), by way of counterexample). Instead, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Williams*, 113 F.4th at 660; *see also Goins*, 2024 WL 4441462 at *7 (considering the "totality of the facts" related to the defendant's criminal history). This task also involves the exercise of judicial common sense, such as a court's "informed judgment about how criminals commonly operate." *Williams*, 113 F.4th at 660 (internal citation and quotation marks omitted).

*Williams* analyzed three classes of prior convictions. First, "crimes against the person," a category including many common law felonies like rape, murder, and robbery, "speak directly to whether a person is dangerous" in the Second Amendment context. *Id.* at 658. While *Williams* formally left as an "open question" whether "crimes in this bucket are dispositive," a defendant with a prior conviction for a crime directly involving physical harm or a serious physical threat carries an "extremely heavy" burden to disprove their presumed dangerousness. *Id.* In fact, dangerousness may be "self-evident" from a prior conviction falling in this category. *Id.* at 660. For example, the Sixth Circuit has concluded that a defendant previously convicted of an "attempted second-degree murder offense [which] involved shooting a young child" was "exactly the type of individual our history and tradition allow Congress to disarm." *Parham*, 119 F.4th at 496.

The second class of offenses are "not strictly crimes against the person" but "may nonetheless pose a significant threat of danger. These crimes do not always involve an immediate

---

but because *Williams* requires a "fact-specific" inquiry that depends "on the unique circumstances of the individual defendant," I consider other relevant evidence, too. *Id.* at 660.

3

and direct threat of violence against a particular person," but "most of [them] put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. One example is "drug trafficking," which "poses a danger to the community" and "often leads to violence." *Williams*, 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)) (internal citation and quotation marks omitted). Another is burglary, which "creates the possibility of a violent confrontation between the offender and occupant." *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)) (internal quotation marks omitted). Consistent with this rationale, the Sixth Circuit has found that multiple prior convictions for driving under the influence, including one incident resulting in a motor vehicle accident, evinced a "dangerous pattern" of behavior that "pose[d] a danger to public safety" and thus helped to justify disarming the defendant under § 922(g)(1). *Goins*, 118 F.4th at 804.

The final category of crimes includes those which "cause no physical harm to another person or the community." *Williams*, 113 F.4th at 659. Unlike the first two classes of offenses, "many of these crimes," such as mail fraud or making false statements, "don't make a person dangerous." *Id.* In all, the gravamen of *Williams*'s analysis, as buttressed by subsequent precedent, is physical harm. A prior conviction for an offense directly involving significant physical harm to one or more persons is very likely to make a defendant dangerous enough to be disarmed under the Second Amendment, while a prior conviction that is highly attenuated from such harm is unlikely to render a defendant dangerous. *See id.* at 657-60. Further, a pattern of conduct risking or causing physical harm strengthens the inference that a defendant is dangerous enough to be prosecuted under § 922(g)(1). *See Goins*, 118 F.4th at 804; *Parham*, 119 F.4th at 495-96.

### 2. Evidence of Norris's Specific Characteristics

Before determining whether Norris has met his burden to show he is not dangerous, I explain what kind of evidence I may and may not consider under *Williams*. I noted above that the

4

procedural context of *Williams* is not a perfect fit for this case because *Williams* involved a post-sentencing challenge to a § 922(g)(1) conviction, while this case involves a pre-trial motion to dismiss the indictment. *See Williams*, 113 F.4th at 662. As a result, no facts have yet been found by a judge or jury, and I also do not have the advantage of a thorough presentence report to inform my analysis. *See id.*

But at the motion to dismiss stage, I must treat the allegations in the indictment as true. *See, e.g.*, *United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014). And *Williams* places "the burden . . . on [the defendant] to show he's not dangerous." *Williams*, 113 F.4th at 662. So, even though I view the allegations in the indictment as true by default, Norris may point to evidence of his "specific characteristics" to rebut the presumption that he is dangerous. *Id.* at 657.

The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," noting that the Supreme Court, in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), had considered a state-court-issued civil restraining order. *Williams*, 113 F.4th at 658 n.12 (citing *Rahimi*, 144 S. Ct. at 1895). This includes all judicially-noticeable information available on the dockets for Norris's various convictions. *See Williams*, 113 F.4th at 657, 658 n.12; *Goins*, 118 F.4th at 804 (considering the defendant's four prior DUI convictions, two public intoxication convictions, and two driving with a suspended license convictions, including the fact that one of the DUI convictions "resulted in a motor vehicle accident"); *Parham*, 119 F.4th at 496 (considering the fact that the defendant's "attempted second-degree murder offense involved shooting a young child").

The indictment cites a 2017 conviction in the Harris County, Texas District Court for possession with intent to deliver a controlled substance. (*See* Doc. No. 1); *State v. Rashad Dontrell Norris*, No. 144030501010 (Harris Cnty. Dist. Ct.). The plea agreement documents and judgment in that case indicate Norris pled guilty to possession with intent to deliver between 4 and 200 grams of

5

cocaine, a first-degree felony in Texas. *See State v. Rashad Dontrell Norris*, Plea Agreement, No. 144030501010 (Harris Cnty. Dist. Ct. April 3, 2017); *State v. Rashad Dontrell Norris*, Judgment, No. 144030501010 (Harris Cnty. Dist. Ct. April 11, 2017). The offense conduct occurred on September 4, 2014. *See id.* He was sentenced to a term of 5 years incarceration, the mandatory minimum for that offense. *See id.*[2]

On the same day he pled guilty to the possession-with-intent charge, Norris also pled guilty to another offense: unlawful possession of a firearm by a person convicted of a felony. *See State v. Rashad Dontrell Norris*, Plea Agreement, No. 1440306701010 (Harris Cnty. Dist. Ct. April 3, 2017); *State v. Rashad Dontrell Norris*, Judgment, No. 144030601010 (Harris Cnty. Dist. Ct. April 11, 2017). This is a third-degree felony in Texas. *See* Tex. Penal C. § 46.04(e). The plea agreement documents indicate Norris was convicted of possessing a firearm "at a location other than the premises at which the Defendant lived"—that is, outside of the home. *See State v. Rashad Dontrell Norris*, Plea Agreement at 1, No. 1440306701010 (Harris Cnty. Dist. Ct. April 3, 2017). Norris was sentenced to a term of five years incarceration to run concurrently with his sentence for the drug offense. *Id.*

In addition to these felony convictions, Norris was convicted of five other offenses: felony possession of cocaine in 2011 for an offense he committed on April 22, 2010 at the age of 17; misdemeanor possession of marijuana in 2011 for an offense he committed on April 1, 2011; misdemeanor failure to stop and give information in January of 2014 for an offense he committed on October 21, 2013; misdemeanor possession of marijuana in January of 2014 for an offense he

---

[2] Texas law criminalizes "knowingly possess[ing] with intent to deliver a controlled substance listed in Penalty Group 1" as a "a felony of the first degree if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, four grams or more but less than 200 grams." Tex. Health and Safety C. § 481.112(a), (d). Penalty Group 1 includes cocaine. *Id.* § 481.102(3)(D). The default penalty range for a first-degree felony in Texas is a minimum of 5 years imprisonment and a maximum of 99 years imprisonment. Tex. Penal C. § 12.32(a).

6

committed on December 30, 2013; and misdemeanor possession of marijuana in August of 2014 for an offense he committed on June 18, 2014. *See State v. Rashad Dontrell Norris*, Judgment, No. 126026501010 (Harris Cnty. Dist. Ct. May 10, 2011) (2010 cocaine possession); *State v. Rashad Dontrell Norris*, Judgment, No. 174790701010 (Harris Cnty. Dist. Ct. May 11, 2011) (2011 marijuana possession); *State v. Rashad Dontrell Norris*, Judgment, No. 193075001010 (Harris Cnty. Dist. Ct. January 30, 2014) (2013 failure to stop and give information); *State v. Rashad Dontrell Norris*, Judgment, No. 193737401010 (Harris Cnty. Dist. Ct. January 30, 2014) (2013 marijuana possession); *State v. Rashad Dontrell Norris*, Judgment, No. 196844201010 (Harris Cnty. Dist. Ct. Aug. 18, 2014) (2014 marijuana possession). Norris, who was born in January of 1993, was convicted of these offenses between the ages of 18 and 21.

But Norris cites more than just docket entries, and his factual assertions range well beyond the information available in the records of his prior convictions. Attempting to contextualize some of those offenses, he makes two main points: (1) "the lack of danger attendant marijuana" renders any of his marijuana-based offenses not relevant to the dangerousness determination, and (2) the fact that "his brain was still developing" at the time he committed certain offenses likewise reduces the extent to which they are probative of his dangerousness. (Doc. No. 16 at 5-6).

Under the guidance given in *Williams*, crediting these arguments would require me to take judicial notice of facts related to the relative harmfulness of marijuana and facts related to the effect of continuing brain development on a young person's behavior. (*See id.*). To support his assertions, he points to several news items, a scholarly article, and two proposed regulatory actions. (Doc. No. 16 at 6). Neither party addresses the propriety of formally considering these documents as part of the dangerousness inquiry, and likewise, neither party addresses whether I may take judicial notice of general facts related to the danger of marijuana and the impact of brain development on a person's behavior. (*See* Doc. Nos. 16 & 17).

7

*Williams* left "the question of what information is relevant" to the dangerousness inquiry "for another day." *Williams*, 113 F.4th at 658 n.12; *see also United States v. Bell*, 2024 WL 4589812 at *5 n.1 (E.D. Mich. Oct. 28, 2024) (stating that "*Williams* did not provide any guidance" on the question of whether a court may consider "circumstances underlying the indictment"). But it did focus on facts that are "judicially noticeable." *Williams*, 113 F.4th at 660; *see* Fed. R. Evid. 201. A fact is judicially noticeable if it "is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Norris has not persuaded me I may take judicial notice of the facts contained in the documents he cites. To support his assertions about marijuana, Norris cites a proposed rule from the United States Department of Justice that would transfer marijuana from Schedule I to Schedule III under the Controlled Substances Act. (*See* Doc. No. 16 at 6). The Controlled Substances Act categorizes a substance according to its "acceptable medical use and . . . abuse or dependency potential," ranging from the highest likelihood of abuse and lowest potential for medical use in Schedule I to the lowest likelihood of abuse and highest potential for medical use in Schedule V. UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, "Drug Scheduling" (July 10, 2018) (accessed November 8, 2024) (available at https://www.dea.gov/drug-information/drug-scheduling).

This regulatory action has not been finalized, and marijuana has been categorized as a Schedule I substance "since Congress enacted the CSA." Questions Related to the Potential Rescheduling of Marijuana, 48 Op. O.L.C. ___ (April 11, 2024) (available at https://www.justice.gov/olc/opinion/questions-related-potential-rescheduling-marijuana); *see* 21 U.S.C. § 812(c)(c)(10). I cannot conclude, from the mere issuance of a notice of proposed

8

rulemaking, that marijuana-based offenses are categorically less probative of dangerousness under *Williams* than offenses involving other illegal drugs.

Nor does that conclusion follow from Norris's citations to news articles about the decriminalization of marijuana. (*See* Doc. No. 16 at 5-6). As he concedes, while some states have legalized or decriminalized marijuana possession, Texas—under whose laws Norris was previously convicted of marijuana possession—"is not one of them." (*Id.* at 6); *see* Tex. Health & Safety C. § 481.121(a) (making it a criminal offense to "knowingly or intentionally possess[] a usable quantity of marihuana"). Because the "lack of danger attendant to marijuana" is at least a debatable proposition (and also a vague one) based on the evidence cited by Norris, I decline to take judicial notice of those facts for purposes of the *Williams* inquiry, and I decline to consider that line of argument. (*See* Doc. No. 16 at 5); Fed. R. Evid. 201(b).

Norris's reliance on evidence about brain development yields the same result. First, Norris cites a single scientific study for the proposition that a person's prefrontal cortex generally continues to develop until the age of 25. (*See* Doc. No. 16 at 6) (citing Arain, Mariam, et al., *Maturation of the adolescent brain*, NEUROPSYCHIATRIC DISEASE & TREATMENT, 9 : 449-61, (2013), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/ (published online April 3, 2013)). While this may indeed be true, the effect of a young adult's continued brain development on their behavior is a matter of "scientific, technical, or other specialized knowledge" on which an expert may opine but a court may not. Fed. R. Evid. 702(a) (defining proper expert testimony); *see United States v. Bonds*, 12 F.3d 540, 552-53 (6th Cir. 1993) (declining to take judicial notice of a scientific report criticizing the FBI's method for declaring DNA matches, and noting that doing so would "preclude" the government "from rebutting the report with expert testimony"). I decline to take judicial notice of the facts in this article and will not consider them for purposes of the *Williams* inquiry.

Second, Norris cites a different proposed rule, this time a proposed update to the United States Sentencing Guidelines that would allow judges to consider a downward departure from a defendant's Sentencing Guidelines range "due to the defendant's youthfulness at the time of the offense or prior offenses." (*See* Doc. No. 16 at 7).  As I explained above, the issuance of a proposed rule is not enough, by itself, for me to take judicial notice of certain statements within it.  Further, as Norris acknowledges, even if the United States Sentencing Commission adopts the proposed amendment to the Sentencing Guidelines, "the precise age of development for each person would need to be determined." (Doc. No. 16 at 7).  In light of *Williams*'s command to "focus on each individual's specific characteristics," Norris's failure to offer any age- or brain development-related evidence specific to him is yet another reason not to consider these arguments in evaluating his dangerousness under *Williams*.  113 F.4th at 657.

The government, too, asks me to draw inferences not consistent with judicially-noticeable facts.  It asserts Norris committed his drug trafficking offense "while possessing a firearm." (Doc. No. 17 at 5).  Although the drug trafficking and felon-in-possession offenses occurred on the same day, that does not mean Norris necessarily committed his drug trafficking offense while in possession of a firearm, and the government does not point to any document that says so. (*See* Doc. No. 17).

Absent any additional judicially noticeable information about the underlying behavior for which Norris was convicted, I decline to infer Norris possessed a firearm while committing his drug trafficking offense. *Cf. United States v. Jennings*, No. 2:24-CR-20173-TBG-EAS, 2024 WL 4560602 at *5 (E.D. Mich. Oct. 24, 2024) (considering information about the behavior underlying the defendant's convictions because it appeared in the "unobjected-to PSR" prepared prior to sentencing). Following *Williams*'s guidance, and given the briefing and argument by the parties here,

10

I will only consider Norris's criminal record and any underlying facts to the extent they are judicially noticeable.

### 3. Applying *Williams* to Norris

Norris has failed to rebut the presumption of dangerousness that attaches because of his two prior felony convictions. Between the ages of 18 and 24, Norris was convicted of a series of drug offenses committed between 2010 and 2014, culminating in his 2017 convictions for cocaine trafficking and possessing a firearm while having been previously convicted of a felony.[3] In *Williams*, after listing the defendant's previous convictions, which included a prior felon-in-possession offense, the court stated that "[t]he government could've pointed to any one of those convictions to demonstrate his dangerousness." *Williams*, 113 F.4th at 662; *see also Jennings*, 2024 WL 4560602 at *3 ("The Sixth Circuit thus sees felon-in-possession . . . as falling in the second category of crimes which, like drug trafficking or burglary, carries with it the possibility that violence or harm to others might occur during its commission").

More pointedly, *Williams* highlighted drug trafficking as "a prime example" of "a serious offense that, in itself, poses a danger to the community . . . and often leads to violence." *Williams*, 113 F.4th at 659 (internal citations and quotation marks omitted). Heeding this call, several district courts in this Circuit have already concluded that drug trafficking offenses support a finding of dangerousness because such behavior carries with it an inherent risk of physical harm to individuals and the community. *See Jennings*, 2024 WL 4560602 at *3; *United States v. Bell*, No. 2:20-cr-20336, 2024 WL 4589812 at *5 (E.D. Mich. Oct. 28, 2024); *United States v. Green*, No. 23-cr-20506, 2024 WL 4469090 at *4 (E.D. Mich. Oct. 10, 2024); *United States v. Oravets*, No. 1:23-cr-601, 2024 WL

---

[3] The Texas state law felony underlying Norris's 2017 felon-in-possession conviction was his 2011 conviction for possession of cocaine. *See State v. Rashad Dontrell Norris*, Guilty Plea, No. 024908221010 (Harris Cnty. Dist. Ct. April 3, 2017); *State v. Rashad Dontrell Norris*, Judgment, No. 126026501010 (Harris Cnty. Dist. Ct. May 10, 2011).

4041442, at *3 (N.D. Ohio Sept. 4, 2024); *see also United States v. Vaughn*, 2024 WL 4615853 at *2 (6th Cir. Oct. 30, 2024) (listing "possession of marijuana" and "intent to sell marijuana" as prior offenses contributing to a finding of dangerousness when considered with the defendant's robbery convictions). Therefore, Norris's felony drug trafficking and felon-in-possession offenses can support a finding of dangerousness on their own.

Further, as *Goins* makes clear, a court's consideration of a defendant's criminal record must account for any relevant "pattern" of that defendant's conduct. *Goins*, 118 F.4th at 804; *see also Bell*, 2024 WL 4589812 at *5 ("the repeated nature of [the defendant's] drug trafficking offenses indicates dangerousness") (citing *Goins*). Here, Norris's criminal record reveals an escalating pattern of illegal drug-related conduct—five offenses in four years—beginning with possession and ending with trafficking.

True, some of this conduct occurred more than 10 years ago, and the behavior underlying Norris's earliest offense of conviction occurred when he was 17. *See State v. Rashad Dontrell Norris*, Judgment, No. 126026501010 (Harris Cnty. Dist. Ct. May 10, 2011). In the wake of *Williams*, a number of courts have drawn the "common sense" inference that older convictions are less probative of dangerousness than newer ones. *Jennings*, 2024 WL 4560602 at *4 (giving less weight to a 27 year-old conviction); *Green*, 2024 WL 4469090 at *3 (finding that the "age" of a 13 year-old conviction "weighs against considering it heavily"); *see also Williams*, 113 F.4th at 660 (drawing a "commonsense" inference about the probative value of certain offenses and explaining that "district courts may make an informed judgment about how criminals commonly operate"). Similarly, at least one court has accorded reduced significance to offenses committed when the defendant was a minor. *See Green*, 2024 WL 446909 at *4 (citing Fed. R. Evid. 609).

In line with this reasoning, I find that the drug possession offenses Norris committed more than a decade ago, including his cocaine possession offense committed while he was a minor, are

12

only weakly probative of Norris's dangerousness when considered on their own. *See* Fed. R. Evid. 609(b), (d) (limiting the admissibility, as impeachment evidence, of juvenile adjudications and convictions more than ten years old).

But the behavior underlying Norris's two felony convictions, which are both his most serious and most recent offenses, occurred less than a decade ago, when he was a legal adult. And while the elapse of a substantial period of time without a conviction can reduce the probative value of a prior conviction, that reasoning does not apply with full force to Norris's felony convictions: he was prosecuted for those offenses in 2017 and was incarcerated for several years between his conviction and his current indictment. *See United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270 at *3 (E.D. Tenn. Oct. 9, 2024) (noting that the defendant "remained incarcerated until 2021").

Moreover, Norris has presented "no countervailing evidence" of his current behavior and life circumstances that might serve to undermine an inference of dangerousness based on his prior convictions. *Vaughn*, 2024 WL 4615853 at *2; *cf. Smith*, 2024 WL 4453270 at *3 (noting the defendant's "rehabilitation efforts" but explaining that "the Court cannot look past Defendant's multiple prior convictions for serious crimes, even if his recent efforts to reverse course prove admirable"); *United States v. Johnson*, No. 24-20429, 2024 WL 4729467 at *5 (E.D. Mich. Nov. 8, 2024) (citing the "dearth of evidence indicating [the defendant's] reformation"). So, the passage of time since Norris's two most recent felony convictions does not substantially undermine their probative value for dangerousness.

In sum, even if Norris's prior drug possession offenses do not themselves strongly indicate dangerousness under *Williams*, his felony drug trafficking and felon-in-possession convictions do. *See Green*, 2024 WL 4469090 at *4 ("Drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption."); *Jennings*, 2024 WL 4560602 at *5 ("Felon-in-possession crimes fall within the category of crimes that pose a significant threat of danger, like drug

13

trafficking or burglary."). The overall escalating pattern of illegal-drug-related conduct supports the presumption that Norris "fit[s] the class-wide generalization" he is too dangerous to possess a firearm. *Williams*, 113 F.4th at 661. Because Norris has not presented sufficient judicially-noticeable evidence to undermine the inference of dangerousness created by the combination of his drug trafficking conviction, his felon-in-possession conviction, and the overall pattern of his drug-related conduct, he has failed to carry his burden to prove he is not sufficiently dangerous to be prosecuted under § 922(g)(1). For these reasons, I deny Norris's motions to dismiss. (Doc. Nos. 11 & 16).

    **B.    EXCLUSION OF TIME UNDER THE SPEEDY TRIAL ACT**

I separately address the exclusion of time from the 70-day Speedy Trial Act clock related to my consideration of Norris's motion. *See* 18 U.S.C. § 3161 *et seq*. Norris filed his first motion to dismiss on May 24, 2024. (*See* Doc. No. 11). The government filed its response on June 6, 2024. (*See* Doc. No. 12). Norris then filed, and I granted, two motions for extensions of time to file a brief in reply. (*See* Doc. Nos. 13 & 14). Norris filed his reply in the initial round of motion practice on July 12, 2024. The full time it took the parties to brief Norris's initial motion, from May 24, 2024 to July 12, 2024, is excludable as "delay resulting from any pretrial motion" and as delay attributable to Norris because he filed the two motions for extensions of time. 18 U.S.C. § 3161(h)(1)(D); *see United States v. Criswell*, 360 F. Supp. 3d 694, 705-06 (S.D. Ohio 2019) (excluding from the Speedy Trial Act clock time attributable to the defendant's motion for an extension of time to file a brief). The 30-day window from July 12, 2024 to August 12, 2024, is also excludable under the Speedy Trial Act as time in which that first motion to dismiss was "actually under advisement." *United States v. Moran*, 998 F.2d 1368, 1371 (6th Cir. 1998) (citing 18 U.S.C. § 3161(h)(1)(J)).

Then, on August 23, 2024, the Sixth Circuit issued its decision in *Williams*, modifying the legal landscape for Norris's Second Amendment challenge and prompting my reevaluation of the parties' arguments. On August 27, 2024, I scheduled a telephone status conference for September

14

12, 2024, to discuss the decision and determine whether the parties needed supplemental briefing. (*See* non-document entry dated Aug. 27, 2024). During the conference, I granted Norris leave to file a supplemental motion to dismiss and set a briefing schedule, with Norris's motion to be filed by October 4, 2024, and the government's response to be filed by October 18, 2024. (*See* non-document entry dated Sep. 12, 2024).

I considered the relevant factors under 18 U.S.C. § 3161(h)(7)(B) on August 23, 2024, the day *Williams* came down, and determined a continuance was necessary so I and the parties could evaluate *Williams*'s impact on the pending motion. I found that "the ends of justice would be served by a continuance and would outweigh the defendant's and public's interests in a speedy trial." *United States v. Brown*, 100 F.4th 703, 712 (6th Cir. 2024) (noting that the district court's "ends of justice" findings need not initially be made on the record as long as they are placed in the record "by the time the district court rules on" a motion to dismiss under 18 U.S.C. § 3162(a)(2)). Accordingly, I exclude time under § 3161(h)(7)(B) from August 23, 2024, until September 12, 2024, the day of the status conference at which Norris requested permission to file a supplemental motion to dismiss in light of *Williams*.

Norris filed his supplemental motion on October 4, 2024, and the government filed its supplemental response in opposition on October 11, 2024. (*See* Doc. Nos. 16 & 17). The motion became decisional on October 25, 2024, when 14 days elapsed from the date the government filed its supplemental response in opposition without the defendant filing a supplemental brief in reply. (*See* Doc. No. 17). Up to an additional 30 days from October 25, 2024 is excludable under the Speedy Trial Act as the time Norris's supplemental motion was "under advisement." *Moran*, 998 F.2d at 1371.

For the reasons laid out above, I find that the following periods of time are excludable from the 70-day Speedy Trial Act clock: May 24, 2024 until August 12, 2024 (for briefing and

15

consideration of Norris's first motion to dismiss), August 23, 2024 to September 12, 2024 (to serve the ends of justice given the effect of the *Williams* decision), and September 12, 2024 to November 18, 2024 (for briefing and consideration of Norris's supplemental motion).

### IV. CONCLUSION

For the reasons stated above, I deny Norris's motions to dismiss. (Doc. Nos. 11 & 16).

So Ordered.

                                            s/ Jeffrey J. Helmick
                                            United States District Judge